Filed May 9, 1888.

No. 13,165.

Reibel, Administratrix, v. The Cincinnati, Indianapolis, St. Louis and Chicago Railway Company.

Railroad.—*Refusal to Stop Train at Station.*—*Jumping from Moving Train.*—*Negligence.*—*Contributory Negligence.*—A railroad company, although it wrongfully refuses to stop its train to allow a passenger to alight at his destination, is not liable for an injury sustained by the passenger in voluntarily jumping from the train while it is in motion.

Same.—*Proximate Cause of Injury.*—*Intervening Agency.*—Where a passenger, at the command of the persons in charge of a moving train, jumps therefrom upon the platform of a station, and alights safely, but is run against by another passenger alighting at the same time, and is thrown under the train by the force of the collision, and injured, the railroad company, in the absence of a further showing, is not liable.

From the Jennings Circuit Court.

*J. S. Scobey,* for appellant.

*A. G. Smith, J. B. Brown* and *R. Hill,* for appellee.

NIBLACK, J.—Action by Frances Reibel, administratrix of the estate, as well as the mother, of Frank Reibel, deceased, against the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company for causing the death of the decedent.

The complaint was in two paragraphs. The first charged that, on the 4th day of July, 1885, the said Frank Reibel, with five other persons, took passage on one of the defendant's trains at the city of Greensburg, in Decatur county, to the town of Sunman, in Ripley county, paying his fare to the conductor on the train, who informed him that the train would stop at Sunman; that, as the train approached the town of Sunman the signal indicating that it would stop at that place was sounded; that thereupon the said Frank Reibel, and the other five persons with whom he was so travelling, went out upon the platform of the car in which they had been riding, preparatory to alighting from the train when it should stop; that the speed of the train was then so checked as to reduce it to the rate of six miles an hour, but that the train did not stop at Sunman, and its speed being about to be increased, the said Frank Reibel and said five other persons jumped from the train onto the platform at Sunman Station, they believing, and having good reason to believe, that they could safely so alight from the train without injury to themselves, or to any one of them; that said other five persons did safely so alight, but that the said Frank Reibel, notwithstanding due care on his part, was caught in his clothing and dragged against and under the train, and was thereby instantly killed, being at the time about twenty-one years old; that they, the said Frank Reibel and said five other persons, without any want of care or negligence on their part, were compelled to get off the train, as they did, while it was in motion, and running as stated at a speed of six miles an hour; that the defendant wrongfully, unlawfully, wilfully and purposely failed, neglected and refused to stop its train of cars at Sunman Station, as it had agreed to

do, but, on the contrary, increased the speed of its train when it reached that place.

The second averred, substantially, the same preliminary facts, and charged that as the train approached Sunman Station its speed was reduced to about five miles an hour, and that at that rate it ran past that station without stopping; that as the speed of the train was about to be increased the said Frank Reibel, and five other persons referred to, stepped from the platform of the car on which they were standing onto the platform at said Sunman Station, alighting thereon safely, but that being then run against by one of the other persons who got off the train with him, he, the said Frank Reibel, was thrown down upon the last named platform and thence under the train, which ran over him, whereby he was instantly killed; that the said Frank Reibel so alighted from the train with the advice, knowledge and command of the defendant, exercising due care, and believing, as he had good cause to believe, that he could do so without injury to himself or to any one else.

Demurrers were sustained to both paragraphs of the complaint, and the defendant had final judgment upon demurrer. We have, consequently, only to inquire whether either one of the paragraphs was sufficient upon demurrer.

The general rule is, that passengers who are injured while attempting to get upon or off a railroad train while it is in motion can not recover for their injuries. 2 Wood Railway Law, 1126; *Jeffersonville R. R. Co.* v. *Hendricks,* 26 Ind. 228; *Jeffersonville, etc., R. R. Co.* v. *Hendricks,* 41 Ind. 48.

To this general rule, some exceptions have been recognized, one of which is where the passenger is either ordered or invited by the company or its agents to get on or off, notwithstanding the motion of the train. *Cincinnati, etc., R. R. Co.* v. *Carper,* 112 Ind. 26; *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592; *Evansville, etc., R. R. Co.* v. *Duncan,* 28 Ind. 441. But a passenger must not attempt either to get onto or off a train while it is in motion, if it be obviously dan-

gerous to make the attempt, although he may have been advised, or even ordered, to do so by the servants of the company. 2 Wood Railway Law, 1127. Such an attempt is at the peril of the passenger, when he is a person of ordinary intelligence and not acting under constraint. While it is the plain duty of a railroad company to stop its train at the place of a passenger's destination long enough to permit him to get off with safety, the fact that a train is about to pass such place of destination without stopping, does not justify the passenger in incurring any serious risk by jumping from the train. In such a contingency, the passenger's remedy is against the company for carrying him past his place of destination.

It is not expressly charged in the first paragraph of the complaint that Reibel, the decedent, was required by the railroad company to get off the train at Sunman Station, as he did. We construe the averment that he was so compelled to quit the train at that place, to mean that he had to jump from it to prevent being carried past his place of destination. In the light of this construction, he was guilty of contributory negligence in jumping from the train under the circumstances as they are described in said first paragraph of the complaint, which was, in consequence, rightly held to be insufficient upon demurrer.

The second paragraph of the complaint admitted that the decedent alighted safely upon the platform of the station at Sunman, but charged that one of his fellow-passengers thereafterwards ran against him and threw him down upon the platform and thence under the train, where he was killed. How this fellow-passenger happened to run against the decedent was not, as has been seen, stated. This may have been the voluntary act of the fellow-passenger. Nothing, at all events, was averred to the contrary. When the decedent reached the platform of the station at Sunman safely, the defendant, presumably, owed him no further duty as a passenger. If the defendant was at fault in any matter that thereafter occurred, it should have been affirmatively alleged. In

other words, it was not affirmatively shown that the defendant's failure to stop its train at Sunman was the proximate cause of the decedent's death. From the facts stated, the inference rather is, that his death resulted from some fault or accident on the part of a fellow-passenger after he became disconnected with the train.

We need not, therefore, inquire whether, as an abstract question, the decedent was, upon the facts charged in the second paragraph of the complaint, guilty of contributory negligence in jumping from the train at Sunman. 2 Wood Railway Law, 1133, 1139, 1144, 1150, 1154; Wharton Neg., section 369 *et seq.*

The judgment is affirmed, with costs.

Filed May 11, 1888.