## DUNNING v. LAKE ERIE & WESTERN RAILROAD COMPANY.

[No. 5,619. Filed May 18, 1906.]

CARRIERS.—*Railroads.—Passenger Alighting from Moving Train. —Contributory Negligence.*—A passenger who, in the darkness, alights from a moving train without any effort to ascertain its speed and sustains injuries thereby, where sufficient time was given for her to alight while the train was stopped, is guilty of such contributory negligence as precludes a recovery.

From Howard Superior Court; *B. F. Harness,* Judge.

Action by Rosa C. Dunning against the Lake Erie & Western Railroad Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*W. C. Overton,* for appellant.

*John B. Cockrum* and *George Shirts,* for appellee.

ROBINSON, J.—Action by appellant to recover damages for personal injury sustained in alighting from a train.

Answer, general denial. Trial, verdict for appellant for $500, and also answers to interrogatories. Appellee's motion for judgment on the answers to interrogatories sustained.

Appellant's assignment of errors presents the question of the correctness of the court's ruling in sustaining appellee's motion for judgment on the answers to interrogatories. Appellee assigns cross-error that the complaint does not state facts sufficient to constitute a cause of action.

The complaint avers facts showing that appellant was rightfully a passenger from Denver to Kokomo; that when the train stopped at Kokomo she immediately and with diligence attempted to get off; that the train was a long, heavily-loaded passenger-train, and appellee had negligently failed to provide a sufficient number of servants to assist passengers to get off and on the train, or to see that all passengers were off the train before starting, and negligently failed to have any conductor, brakeman or other person to assist passengers to get off, or to see when they were off the car, or to hold back passengers who were getting on the car until all passengers were off; that by reason of such failure, as soon as the car stopped and before passengers could alight, the passengers who were intending to get on the car began to get on, and obstructed the aisles and steps, and greatly impeded passengers who were alighting; that the employes did not stop the train "longer than about one and one-half or two minutes, as near as plaintiff can say," and did not hold the train long enough for passengers to alight, taking into consideration the crowded condition of the car and the number of passengers getting on and off the same, and started the train not knowing whether all passengers had alighted, and well knowing that the train had not been kept waiting long enough for all passengers to alight and before they had all alighted, and before appellee had time to or could get off; that "when plaintiff went to step off of said car she saw and knew that

said train was moving, but at said time it was night, and she was confused and agitated by her efforts to push through the crowd and rush of passengers getting on said car and coming into the same, and she was not accustomed to estimating the speed of moving trains; that when she went to step from said car it was running smoothly and without jar, and therefore she thought and believed that said train was moving, and the same appeared to her to be moving very slowly, and she believed that she could easily and with safety step from the car; that in reality defendant's servants in charge of said car and train had started the same rapidly, and when she went to step off said car was moving as near as plaintiff can say at the rate of three or four miles per hour, and with such rapidity that, on alighting, she was thrown" to the pavement and injured.

In answer to interrogatories the jury find that after the train stopped appellant started to get off, and upon reaching the platform thought of her umbrella which she had left in the car, and went back into the car to get it. In answer to questions as to how long the train stopped, the rate of speed it was moving when she stepped off, and whether, if appellee had not returned for her umbrella, she could easily and safely have alighted from the car while the same was not in motion, and whether the train stopped long enough for appellant to have alighted if she had alighted when she first reached the platform, and had not gone back into the car, and whether she could have alighted with safety while the train was stopped had she not gone back, the jury answered: "Not sufficient evidence." The jury further answered: (7) That appellant's parents were passengers in the same coach with her and that when the train stopped they all preceded her to the platform to get off, and that the parents alighted safely before the train was started. (8) That if appellant had alighted with her parents instead of returning for her umbrella she could have done so in safety while the car remained standing; that the train

had run about sixty-five feet from the station before appellant alighted. (11) "Did the train on which the plaintiff was a passenger stop long enough at the station at Kokomo to allow passengers, including the plaintiff, to alight therefrom in safety? A. No." The jury further answered that appellant made no effort to ascertain the speed of the train at the time she stepped off; that in alighting from the train she had her skirts in one hand and her purse in the other, and that without taking hold of the hand-rail or other support stepped directly and straight out from the train.

The answers to the interrogatories show that appellant was guilty of contributory negligence. The complaint avers that the train had stopped one and one-half or two minutes; that before she alighted the train had again started, which she knew; that it was in the night-time; that when she went to step from the car it was running smoothly; that she thought and believed the car was running very slowly, and she believed she could safely alight. The answers show that if appellant had not gone back into the car she could have alighted with safety while the train was standing; that she made no effort to ascertain the speed of the train at the time she stepped off; and that having parcels in both hands and without taking hold of the handrails or other support she stepped directly and straight out from the train. When appellant reached the car steps the train was leaving the station, which she knew. It was at the time dark, which she knew. It must be said that to attempt to leave the train at the time she did and in the manner she did was dangerous. Practically the same question here presented has been decided adversely to appellant. See *Toledo, etc., R. Co.* v. *Wingate* (1895), 143 Ind. 125; *Pennsylvania Co.* v. *Hixon* (1894), 10 Ind. App. 520.

The theory of the complaint seems to be, and it is so stated in appellant's brief, that the injury resulted by reason of the failure of appellee's servants to stop the train a sufficient time to enable appellant to alight in safety at the

station. But the answers to the interrogatories show that appellee was not guilty of this specific negligence. It is expressly found that she was with her parents who alighted safely from 'the car, and that if appellant had alighted from the car with her parents, instead of returning for her umbrella, she could have done so in safety while the cars remained standing. The answer to interrogatory eleven is not necessarily in conflict with the answers to seven and eight. The last two interrogatories relate exclusively to appellant, and are upon the question of whether she had time to get off the train, while interrogatory eleven relates to appellant and also to all other passengers in the train. If appellant had time to alight from the car in safety while it was standing and did not do so, she cannot complain that the train did not stop long enough for all the other passengers to alight.

Judgment affirmed.